**Steven QUINLAN, Plaintiff,**

v.

**FREEMAN DECORATING, INC., National Marine Manufacturers Association, Inc., and Norwalk Cove Marina, Inc., Defendants.**

**National Marine Manufacturers Association, Inc., Third–Party Plaintiff,**

v.

**Bergen Point Yacht Basin, Inc., Third–Party Defendant.**

**No. 99 Civ. 0031(WCC).**

United States District Court, S.D. New York.

Aug. 24, 2001.

Rogan, Guida & Orenstein (Jeffrey P. Rogan, of counsel), White Plains, NY, for plaintiff.

Chesney & Murphy, LLP (Henry D. Nelkin, of counsel), Baldwin, NY, for defendant/third-party plaintiff National Marine Manufacturers Association, Inc.

Law Offices of Alan I. Lamer (Jay M. Solomon, of counsel), Elmsford, NY, for third-party defendant Bergen Point Yacht Basin, Inc.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Steven Quinlan brings this diversity action against defendant National Marine Manufacturers Association, Inc. ("NMMA")[1] pursuant to 28 U.S.C. § 1332(a)(1) for personal injuries sustained while working at the New York National Boat Show (the "Boat Show") held at the Jacob K. Javits Convention Center (the "Javits Center") in New York City on January 4, 1996. NMMA now moves for sum-

---

**1.** On March 30, 2001 and April 20, 2001, plaintiff withdrew all claims asserted against defendants Freeman Decorating, Inc. and Norwalk Marina, Inc.. Bergen Point Yacht Basin, Inc. ("BPYB") was also named as a defendant in the original Complaint, but was terminated from the original lawsuit on May 16, 2000 by the filing of the Amended Complaint. It remains in the case only as a third-party defendant.

mary judgment pursuant to FED.R.CIV.P. 56(b) on the ground that plaintiff was a "special employee" whose exclusive remedy is under New York's Workers' Compensation Law. Plaintiff cross-moves to strike NMMA's affirmative defense of Workers' Compensation. For the reasons stated hereinafter, NMMA's motion is granted.

## BACKGROUND

On May 1, 1995, the New York Convention Center Operating Corporation ("NYC-COC"), operator of the Javits Center, entered into a contract with NMMA whereby NMMA acquired the right to produce the 1996 Boat Show at the Javits Center. (Def.R. 56.1 Stmt. ¶ 2.) The contract explicitly stated that "Contractor and exhibitor *must* hire Javits labor ... [for][l]oading, unloading and moving exhibitor freight materials and machinery." (Nelkin Aff. ¶ 10, Ex. E(B) (emphasis in original).) Plaintiff's name was included in the list of "Javits labor." (*Id.*) It also required NMMA to submit a "Plan of Operation" containing such information as the anticipated space and facility usage, which the NYCCOC reserved the right to alter to insure "the safe and orderly operation" of the Javits Center. (*Id.*) The NYCCOC remained directly responsible for the laborers' wages and benefits and was reimbursed therefor by NMMA. (Pl.Aff.¶ 4, Ex. A.) Pursuant to an agreement with third-party defendant BPYB, NMMA supplied all of the travel-lift equipment for the Boat Show. (Def.R. 56.1 Stmt. ¶ 3; Nelkin Aff., Ex. E(C).)

Plaintiff is a member of Local 807 of the Teamsters Union and in July 1995 was hired by the NYCCOC (Pl.R. 56.1 Stmt. ¶ 13) as a forklift operator and help checker. (Pl.Dep. at 12, 16.) Prior to signing in, he usually did not know the nature of his job responsibilities "because there could be two shows going on." (Pl.R. 56.1 Stmt. ¶ 8; Pl.Dep. 17; Pl.Aff. ¶ 4.) He received his instructions only upon appearing for work and reporting to the teamster foreman.

On January 4, 1996, after signing in at the labor hall, plaintiff was instructed by the foreman "to go to the [B]oat [S]how to do the travel lift." (Pl.Dep. at 17.) Specifically, he was told to "[m]eet upstairs in the group and then the [B]oat [S]how supervisor will assign you your work." (*Id.* at 20.) When he arrived, he was told by the Boat Show supervisor to "[g]o to travel lift [sic], you're working with Jack [Raymond] and Paul [Matthews], they will be driving and operating the travel lift." (*Id.* at 26.)

While working for the Boat Show, plaintiff's responsibilities involved positioning the boat straps which supported the boat as it was lowered onto a dolly from a trailer. When the boat was in place on the dolly, plaintiff removed the straps. (*Id.* at 29–30; Nelkin Aff. ¶ 7.) He performed this operation on 20 to 25 boats and testified that "[t]hat's all I worked on that day." (Pl.Dep. at 34, 58.)

Although plaintiff testified that no verbal instructions were given to him (*id.* at 31, 57–58), he had learned how to perform these duties by watching Raymond and Matthews. (*Id.* at 28–29.) However, Raymond, who was employed by NMMA for the 1996 Boat Show (Def.R. 56.1 Stmt. ¶ 4), testified that every morning he instructed the workers on how to position the dollies under the boats. (Raymond Dep. at 30–31.) In any event, during the day plaintiff was told when to move or remove the dolly from under the boat and shown how to put the pin in the clamp. (Pl.Dep. at 33, 42.) The Boat Show supervisors instructed him as to the location of the dollies, the type of dolly to be used and when he could take a work break. (*Id.* at

42, 103–05.)[2] Plaintiff testified that "[a]s far as I know, I was under the guidance of Jack and Paul, the travel lift operators themselves." (*Id.* at 103.)

Plaintiff was physically injured while performing his boat strapping duties on a travel lift. His right hand was trapped under one of the boats when it suddenly dropped, ripping off the flesh. (*Id.* at 76.)

Dan Rea, Operations Manager for the Boat Show and full-time NMMA employee whose duties consisted of contracting with the various parties, testified that he believed that the "strap persons," such as plaintiff, were employed by NMMA. (Rea Dep. at 64.) He testified that the team unloading the boats consisted of the teamsters, a full-time NMMA supervisor, a team supervisor, *e.g.*, Raymond, and the operator of the specific piece of equipment. (*Id.* at 65.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," FED.R.CIV.P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the non-moving party. *See City of*

*Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies that burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. At this stage, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

### II. *Special Employee Status*

It is well settled that Worker's Compensation is the exclusive remedy for any employee injured as a result of negligence attributable to his employer. See N.Y. WORKERS' COMP.LAW § 11. It is also well settled that this exclusive remedy extends to "special employees." See *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 578 N.Y.S.2d 106, 107–08, 585 N.E.2d 355 (1991). "A special employee is described as one who is transferred for a limited time of whatever duration to the service of another." *Id.* "Therefore, a general employee of one employer may be a special employee of another employer[ ],"

---

**2.** In plaintiff's affidavit, he avers that the NYCCOC supervisors instructed him when to take a work break. (Pl.Aff.¶ 8.) However, in his deposition, it is clear that he was responding to a questioning concerning the boat supervisors.

*Giordano v. Freeman Decorating Co.*, No. 97 Civ.1928, 2000 WL 323256, at *3 (S.D.N.Y. Mar. 28, 2000), "notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits." *Thompson*, 578 N.Y.S.2d at 108, 585 N.E.2d 355. Several factors are considered when assessing whether a special employment relationship exists. These include:

1) the right to and degree of control by the alleged employer over the manner, details, and ultimate result of the work of the special employee; 2) the method of payment; 3) the right to discharge; 4) the furnishing of equipment; and 5) the nature and purpose of the work.

*Giordano*, 2000 WL 323256, at *4 (quoting *Makarova v. United States*, No. 97 Civ. 4748, 1999 WL 58693, at *6 (S.D.N.Y. Feb.5, 1999)); *see Martin v. Baldwin Union Free Sch. Dist.*, 271 A.D.2d 579, 706 N.Y.S.2d 712, 714 (2d Dep't 2000). While no one factor is determinative, the first factor, *i.e.,* the right to and degree of control by the alleged employer over the manner, details, and ultimate result of the work of the special employee, has been termed "significant and weighty" by the New York Court of Appeals. *Thompson*, 578 N.Y.S.2d at 109, 585 N.E.2d 355. However, it must be emphasized that general employment is presumed to continue and this presumption can be rebutted only upon "clear demonstration of surrender of control by the general employer and assumption of control by the special employer." *Id.* at 108, 585 N.E.2d 355.

We are persuaded by the decisions in *Giordano and Crowley v. Larkin, Pluznick, Inc.*, No. 98 CV 5730, 2001 WL 210496 (E.D.N.Y. Feb.26, 2001), where summary judgment was granted in favor of the defendants in cases involving facts virtually identical to those of the instant case. In *Giordano*, the plaintiff Eugene Giordano, a member of the Carpenters' Union, was hired by the NYCCOC in July 1995. *See* 2000 WL 323256, at *1. All of the work he performed at the Javits Center was in connection with trade show productions. *See id.* at *2. The defendant, Freeman Decorating Company ("Freeman"), a trade show contractor, entered into an agreement with the NYCCOC whereby it obtained the right to produce a trade show, and was required to procure all employment through the NYCCOC and reimburse the NYCCOC for all wages paid to its employees. *See id.* at *1. At the beginning of the work day, the NYCCOC instructed Giordano to report to work at the labor hall where, after signing in, he was assigned to work for Freeman. In connection with this assignment, he sustained a physical injury. *See id.* at *2.

Judge Casey concluded that a special employment relationship existed because: "1) Freeman controlled the manner, details and ultimate result of Giordano's work; 2) Freeman furnished the tools and equipment necessary for producing the trade show; and 3) the nature and purpose of Giordano's work was in furtherance of Freeman's objective of producing the trade show." *Id.* at *6. Judge Casey so held notwithstanding the fact that a NYCCOC employee was present at the trade show to oversee the general safety of the carpenters. *See id.* at *5. Judge Casey observed that none of the NYCCOC personnel gave any specific work assignments to the plaintiff. *See id.* at *4. Therefore, once the NYCCOC assigned the plaintiff to work for Freeman, "the NYCCOC effectively surrendered control over Giordano to Freeman for the duration of his assignment." *Id.* None of the proffered evidence suggested that "the NYCCOC ... retained any superseding authority to direct Giordano in the performance of his explicit duties for Freeman, upon his assignment

to Freeman." *Id.* at \*5. Indeed, even though Giordano cited a few examples of his interaction with the NYCCOC foremen, Judge Casey concluded that such examples were insufficient to establish their ultimate authority over Giordano. *See id.* at 5 & n. 3. Instead, their function was to monitor the overall safety of the union employers; not to direct them in their performance of their specific duties. *See id.* at \*5.

And, in *Crowley*, the plaintiff, a member of the Teamsters Union, Local 807, was hired by the Javits Center as a "helper/checker" to receive and move exhibits. *See* 2001 WL 210496, at \*2. He was also injured while transporting exhibition materials for Freeman in connection with the International Kids Fashion Show. *See id.* at \*1–2. Judge Gershon, relying on *Giordano,* held that "[i]ndeed, *Giordano* presented a stronger case for finding that the worker was *not* a special employee because, unlike helper/checkers, NYCCOC supervises carpenters for general safety compliance." *Id.* at \*4 (emphasis in original).

■ Similarly, in this case, plaintiff admits he was assigned work on a daily basis. In setting up the boats, he followed the direction of Raymond and Matthews. Plaintiff's attempt to downplay the supervision of Raymond and Matthews is unpersuasive. Although he testified that no verbal instructions were given, he also testified that Raymond and Matthews "[b]asically walk[ed] us through" the first boat. (Pl.Dep. at 29.) Because plaintiff admits that "[t]his was the first day I ever worked that show," (*id.* at 100), and that he had to "basically, learn as you go" (*id.* at 28), it is obvious that the instructions were more than mere "guidance." Indeed, because this case involves a novice, the aspect of control is more compelling than *Giordano,* which involved the specialized field of carpentry.

The only evidence proffered by plaintiff in support of his contention that he remained under the exclusive control of the NYCCOC is his own affidavit. Although he avers that, *inter alia,* he observed a teamster foreman determine the amount of manpower used in the placement of a boat and instruct the employees how to transport a vehicle, he cites no examples of his interaction with the NYCCOC foreman. (Pl.Aff.¶ 7.) Moreover, the conclusory statement that the NYCCOC had the discretion to determine where the laborers were assigned is not enough to defeat summary judgment. *See Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (holding that a non-moving party must present more than merely conclusory allegations or unsubstantiated speculation to defeat summary judgment). Indeed, Judge Casey disregarded an example proffered by Giordano that he had been taken " 'off a couple of [unspecified] jobs' when there were too many apprentice carpenters in one building." *Giordano,* 2000 WL 323256, at \*5 n. 3 (alteration in original).

The cases relied on by plaintiff are unpersuasive. In *Shelley v. Flow Int'l Corp.,* 724 N.Y.S.2d 244 (4th Dep't 2001), the Appellate Division, Fourth Department held that the defendants had failed to meet their initial burden of establishing a special employment relationship because they failed to show that the plaintiff consented to it. *See id.* at 246. However, in that case, because the plaintiff worked on a site for only three days, the court found that there was no basis for it to conclude that she had impliedly consented to a special employment relationship with her general employer's wholly-owned subsidiary. *See id.* In contrast, in this case, the nature of plaintiff's job consisted of assisting different trade and exhibition shows. Thus, he was well aware of NMMA's separate identity. (Pl.Dep. at 100, 103.)

In *Gonzalez v. John B. Lovett Assoc., Ltd.,* 228 A.D.2d 342, 644 N.Y.S.2d 249 (1st Dep't 1996), the evidence was found insufficient to establish that the general employer had surrendered control over the employee. *See id.* at 250. Although the court noted the importance of a contract which provided that the special employer's authority was conditioned on the owner's approval, it also recognized that such agreements are not dispositive of the special employment issue. *See id.* Indeed, this statement diminishes the significance of the NYCCOC's right to approve and change the Plan of Operation. *Matter of Quick v. Steuben County Self–Ins. Plan,* 242 A.D.2d 833, 662 N.Y.S.2d 608 (3d Dep't 1997), *leave to appeal dismissed,* 91 N.Y.2d 866, 668 N.Y.S.2d 561, 691 N.E.2d 633, and *Matter of Adams v. Otsego County Dep't of Soc. Servs.,* 269 A.D.2d 626, 702 N.Y.S.2d 698 (3d Dep't 2000), were appeals from decisions of the Worker's Compensation Board (the "Board"). In *Matter of Quick,* the court acknowledged the general rule that the Board's factual determination whether a special employment relationship existed " 'will be upheld if supported by substantial evidence.' " 662 N.Y.S.2d at 609–10 quoting *Matter of Shoemaker v. Manpower, Inc.,* 223 A.D.2d 787, 635 N.Y.S.2d 816, 817 (3d Dep't 1996), *leave to appeal dismissed,* 88 N.Y.2d 874, 645 N.Y.S.2d 448, 668 N.E.2d 419. Finally, in *Goss v. State Univ. Constr. Fund,* 261 A.D.2d 860, 690 N.Y.S.2d 811 (4th Dep't 1999), *leave to appeal dismissed in part and denied in part,* 94 N.Y.2d 847, 703 N.Y.S.2d 70, 724 N.E.2d 766, the special employer admitted that it had no control over the plaintiff. *See id.* at 813.

Accordingly, we conclude that: NMMA controlled the manner, details and ultimate result of plaintiff's work; NMMA furnished all of the travel-lift equipment necessary for transporting the boats; and the nature of plaintiff's work was in furtherance of the NMMA's objective in producing the Boat Show. In light of the fact that 3 of the 5 factors weigh in favor of a special employment relationship, we grant NMMA's motion. The fact that the NYC-COC was directly responsible for plaintiff's wages does not dictate a different conclusion. As stated above, a special employment relationship can exist notwithstanding the fact that another employer is responsible for the laborer's wages. In any event, NMMA apparently reimbursed the NYCCOC for the wages paid, thereby rendering it ultimately responsible for plaintiff's wages. Finally, plaintiff's conclusory allegations regarding the right to discharge are insufficient to create a triable issue of material fact.

### CONCLUSION

For the aforementioned reasons, NMMA's motion for summary judgment is granted. This renders moot plaintiff's motion to strike the affirmative defense of Workers' Compensation. It also renders moot NMMA's third-party claim against BPYB. The action is hereby dismissed with prejudice.

**SO ORDERED.**